Freeman R. BATEMAN, Sr., Joyce R. Bateman, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF COMMERCE, National Oceanic and Atmospheric Administration, Defendants.

No. 90–10034–Civ.

United States District Court, S.D. Florida.

June 14, 1991.

David Paul Horan & Assoc., P.A., Key West, Fla., for plaintiffs.

Robert K. Senior, Sp. Asst. U.S. Atty., Miami, Fla., for defendants.

## FINAL ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, Chief Judge.

This cause is before the court upon the parties' cross-motions for summary judgment. The plaintiffs filed this action seeking review of the February 23, 1990, Final Agency Action, which includes a civil penalty imposed against them by the National Oceanic and Atmospheric Administration (NOAA) of the United States Department of Commerce (USDC) in administrative docket numbers 815–183 and 815–814. The parties agree that no genuine issue of material fact exists, and thus this case can be decided as a matter of law. After having heard oral argument by the parties and having reviewed the memoranda submitted

by the parties and all applicable law, the court now sets forth its decision.

## BACKGROUND

On June 17, 1987, officers of the Florida Marine Patrol boarded the F/V "Miss Amy" for a routine inspection of its catch, while the vessel was located within the Exclusive Economic Zone (EEZ) of the United States described in 16 U.S.C. § 1802(6).[1] Upon boarding, an officer located eleven cooked stone crab claws in a bowl in the galley refrigerator. The vessel's captain, Randy Mason, was cited for possession of stone crabs in the EEZ during the stone crabs' closed season, which runs from May 16 through October 14.

Upon review of the case, on August 2, 1988, the defendants issued a Notice of Violation and Assessment (NOVA) charging the plaintiffs, as owners of the F/V "Miss Amy," with possession of stone crab claws during the closed season. The plaintiffs were not aboard the vessel at the time of the violation. The NOVA stated, however, that the plaintiffs "jointly and severally, or an individual under their control, did unlawfully possess eleven stone crab claws during the closed season specified at 50 C.F.R. 654.22,[2] in violation of 50 C.F.R. 654.6(k)[3] and 16 U.S.C. § 1857(1)(A).[4]"

On August 23, 1988, the plaintiffs requested an administrative hearing to contest the charge. The Honorable Hugh J. Dolan, Administrative Law Judge, presided over the administrative hearing on March 2, 1989, in Key West, Florida. On July 27, 1989, ALJ Dolan released his initial decision, concluding that the plaintiffs were

indeed in violation of the Magnuson Conservation and Fishery Management Act of 1976, 16 U.S.C. § 1801 *et seq.*, and the stone crab regulation promulgated thereunder. ALJ Dolan ordered the imposition of a civil penalty of $6,000 against the plaintiffs, as owners of the F/V "Miss Amy."[5]

On August 24, 1989, the plaintiffs petitioned the defendants for discretionary review of Judge Dolan's initial decision. The petition for discretionary review was denied by order dated February 23, 1990. Plaintiffs consequently filed their action in this court, seeking judicial review of the final administrative action.

## STANDARD OF REVIEW

The Administrative Procedure Act empowers a court to strike down agency actions taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Although fact findings and findings on mixed questions of fact and law are subject to a limited standard of review and are set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or if "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E), questions of law are freely reviewable, and courts are under no obligation to defer to an agency's legal conclusions. *See Coca–Cola Co. v. Atchison, T. & S.F. Ry.*, 608 F.2d 213, 218 (5th Cir.1979). Administrative construction cannot control the court's decision as to the proper interpretation of the law.

---

1. "The term 'exclusive economic zone' means the zone established by Proclamation Numbered 5030, dated March 10, 1983. For purposes of applying this chapter, the inner boundary of that zone is a line coterminous with the seaward boundary of each of the coastal States." 16 U.S.C. § 1802(6). The EEZ extends seaward to a line two-hundred miles off-shore. Proclamation no. 5030, 3 C.F.R. 22–23 (1983 compilation).

2. "No person may possess stone crabs or any parts thereof in the EEZ during the period from 0001 hours (local time) May 16 through 2400 hours (local time) October 14." 50 C.F.R. § 654.22(a).

3. It is unlawful for any person to "[t]ake or possess stone crabs, or any part thereof, in the EEZ during the closed season specified in § 654.22(a)...." 50 C.F.R. § 654.6(k).

4. "It is unlawful—(1) for any person—(A) to violate any provision of this chapter or any regulation or permit issued pursuant to this chapter...." 16 U.S.C. § 1857(1)(A).

5. The NOVA issued to the vessel's captain was also in the amount of $6,000. The NOAA Enforcement Operations Manual provides for a fine from $12,000 to $15,000 for a first violation of 50 C.F.R. 654.22.

In the instant case, the material facts are undisputed. The question for the court to decide is whether the plaintiffs have violated the Magnuson Act and any regulation promulgated thereunder. This involves questions of statutory and regulatory construction, which are freely reviewable questions of law.

## DISCUSSION

■ The crux of the plaintiffs' argument is this: inasmuch as they were not aboard the M/V "Miss Amy" when the violation occurred, the plaintiffs should not be held responsible for the violation. The plaintiffs seek summary judgment on the basis that their only connection to the violations against them is that they owned the vessel in question and allowed the vessel to be used for shrimping activities by an independent captain. The plaintiffs contend that while the captain of their vessel is guilty, the plaintiffs are innocent and should be exculpated. The defendants, on the other hand, urge the court to conclude that the plaintiffs are liable for the acts of their vessel's master and to enforce the administrative penalty.

The provision of the Magnuson Act which the plaintiffs are charged with violating is codified at 16 U.S.C. § 1857(1)(A). This provision reads: "It is unlawful—(1) for any person—(A) to violate any provision of this chapter or any regulation or permit issued pursuant to this chapter...." The Act defines person as

any individual (whether or not a citizen or national of the United States), any corporation, partnership, association, or other entity (whether or not organized or existing under the laws of any State), and any Federal, State, local, or foreign government or any entity of any such government.

16 U.S.C. § 1802(22).[6]

Even the plaintiffs agree that they, as vessel owners, could fit within the Act's definition of "person" in at least some instances. The plaintiffs assert, however, that there is nothing within the statutory or regulatory framework which would indicate an intent to impose strict liability solely on the basis of their position as vessel owners. Rather, there must be a sufficient nexus between the owner and the offending party before liability can be imposed on the vessel owner.

The defendants, though, are not arguing that strict liability should apply against the plaintiffs. Indeed, neither the USDC's Initial Decision nor the Order Denying Discretionary Review applied absolute liability as the basis for determining the plaintiffs' liability. Instead, the decisions cited the facts and circumstances of this particular case and declined to deviate from past findings of liability in previous cases with similar scenarios.

Turning to the particular facts and circumstances of this case, the plaintiffs hired Randy Mason to captain their vessel for a shrimping operation. At the time Mr. Mason was hired, the plaintiffs were aware that Mr. Mason had previously been caught violating the regulations regarding the possession of stone crabs.

Mr. Mason was hired on a "catch-share" basis, that is, the plaintiffs received a share of the shrimp catch outright since they were the owners of the vessel. The balance of the catch was to be purchased by the plaintiffs for their seafood business. The plaintiffs wrote checks to each of the crew members for their portion of the catch.

The plaintiffs prohibited Mr. Mason or any of the crew members from fin-fishing, since this activity was believed to reduce energies that could otherwise be spent on shrimping. The plaintiffs also conditioned the captain's continued employment on his not violating any laws regarding closed season fishing. The plaintiffs retained the right to fire Mr. Mason and to instruct him to fire any of the crewmen.

The defendants, citing the same administrative case decisions and District of Alas-

---

**6.** The Act's provision defining "person" was formerly (at the time of the issuance of the NOVA) codified at 16 U.S.C. § 1802(19). The current definition of "person" is identical to that in § 1802(19).

ka decision that the USDC cited in its administrative decision against the plaintiffs and denial of review, assert that vessel owners are routinely held liable for violations of their masters in cases such as the one before the court. In *United States v. Kaiyo Maru Number 53*, 503 F.Supp. 1075, 1077 (D.Alaska 1980), *aff'd*, 699 F.2d 989 (9th Cir.1983), the owner of a Japanese fishing trawler was cited for possession of halibut, a species prohibited to foreign fishing under the Act, and for fishing in an area of the Fishery Conservation Zone of the North Pacific for which the vessel had not been authorized. Reasoning that effective enforcement of the law and a regulatory program designed to punish the vessel and its owners go hand in hand, the *Kaiyo* court concluded that the owner must be held legally responsible for any violations resulting from the fishing operations of the vessel. *Id.* at 1090.

Similarly, in *In the Matter of Sam Millis and Miss Charlotte, Inc.*, 4 O.R.W. 340 (NOAA 1985), *In the Matter of Ronnie and Charlotte Boggess*, 4 O.R.W. 260 (NOAA 1985), and *In the Matter of Miller Seafoods, Inc.*, 3 O.R.W. 55 (NOAA 1982), the vessel owners were also held liable for the transgressions of their masters. In *Millis*, the vessel owner and master were charged jointly and severally with unlawfully using trawl gear and possessing shrimp unlawfully taken from a Fishery Conservation Zone. In finding both the owner and master liable, ALJ Dolan stated:

> It is not necessary that the owner exercise detailed control over the operations of the vessel in order for it to be held liable for the illegal activities of its master and crew. It is sufficient that ... the owner of the vessel and the major beneficiary of its operations authorized the expedition which was illegally conducted. Since it acquires a share of the vessel's production, so must it bear a major responsibility, along with the captain, for the latter's unlawful acts. To hold otherwise would be to allow vessel owners to escape responsibility for the transgressions of the captains that they hire, authorize to operate their boats, and

have the authority to fire. Such a holding would substantially inhibit the effective enforcement of the Magnuson Act and the applicable regulations thereunder.

*Millis*, 4 O.R.W. at 347. The court is well aware of the Magnuson Act's important role in protecting the strong federal interest in the preservation of natural resources within fishery conservation zones. The court agrees that in the circumstances present in *Kaiyo Maru, Millis, Boggess*, and *Miller*, the vessel owners did justifiably absorb their share of the culpability. However, the circumstances are significantly different in the case *sub judice*.

In *Kaiyo Maru, Millis, Boggess*, and *Miller*, the vessel owner stood to make a direct gain from the illegal conduct. For example, in *Millis*, the more shrimp the vessel caught in the illegal Fishery Conservation Zone, the more money the owner stood to make. The other three aforementioned cases contain these identical dynamics.

In the instant case, however, the owners stood to gain nothing from the illegal actions of Randy Mason. The captain and his crew were not harvesting stone crabs in the off season so they or the owners could make a commercial gain. The Florida Marine Patrol found eleven cooked stone crab claws in the galley refrigerator. It is plain to the court that these illegal stone crab claws were for the personal consumption of the captain and/or crew, not for the vessel owner's profit or consumption.

■ If the F/V "Miss Amy" had been trawling for shrimp in an illegal conservation zone, this court would not be prepared to go against the line of precedent previously discussed, notwithstanding the owners' arguments regarding their attenuated relationship with Randy Mason. In order for the congressional intent of the Magnuson Act to be effective, it follows that a vessel owner could be liable for the illegal conduct of a master in such situations. A quasi-intent to aid in the illegal activity can be imputed to an owner where the owner stands to make an economic gain as a result of the illegal activity.

On the other hand, enforcing the law against the owners in the instant situation would appear to serve no other purpose

than to circumvent basic equitable principles and needlessly punish a party who made a good faith attempt to prevent illegal activity by his captain and crew. It is evident from the record that Mr. Bateman used reasonable care and took reasonable steps in hiring his captain. Mr. Bateman warned Randy Mason that if he did anything illegal, he would be fired. Mr. Bateman also placed on the vessel a pamphlet containing information regarding fisheries violations. Mr. Bateman could do no more than get the assurance of Randy Mason that no illegal activity would occur.

Comparing federal forfeiture law in illegal drug cases with procedures under the Magnuson Act may be helpful. If, for example, the government attempted to seize the F/V "Miss Amy" through civil forfeiture proceedings as a result of the captain's hypothetical use of the vessel to run drugs without the owners' consent or knowledge, the Batemans could not be forced to forfeit their vessel if they were "innocent owners." *See* 21 U.S.C. § 881(a)(4)(C). A similar result should apply in this case. To hold otherwise would be to apply strict liability to owners as a class for the violations charged, and it is evident that the legislature did not so intend.[7]

In accordance with the foregoing discussion, it is

ORDERED and ADJUDGED that the plaintiffs' motion for summary judgment be, and the same hereby is, GRANTED. The penalty imposed upon the plaintiffs by the Administrative Law Judge is hereby QUASHED. It is further

ORDERED and ADJUDGED that the defendants' cross-motion for summary judgment be, and the same hereby is, DENIED.

DONE and ORDERED.

---

**7.** Both the regulatory and statutory schemes in question set forth definitions of "owners" and provide regulations and prohibitions directed to that specific class of persons. *See, e.g.,* 16 U.S.C. § 1857(2). The legislature appears to have given much thought to a person's status as a vessel owner. The failure to designate "owners" within the provisions of 16 U.S.C. § 1857(1) appears to remove vessel owners as a class from the scope of this statutory language. In addition, the defendants do not even argue that strict liability applies.